## LYNCH v. ROBERSON.

## In re TENNESSEE RIVER COAL CO.

(Circuit Court of Appeals, Sixth Circuit. March 13, 1923.)

### No. 3764.

1. **Bankruptcy ⟨⟩440—Denial of summary petition to recover assets from state receiver of another corporation reviewed on petition to revise.**

Where it was immaterial whether an order dismissing a summary petition to compel a receiver appointed by a state court for another corporation to surrender the assets in his hands to the trustee in bankruptcy was reviewed on appeal or on petition to revise, and petitioner had treated the proceeding below as summary in character, that character may be allowed to determine its nature in a reviewable sense as an administrative order in course of bankruptcy, reviewable by petition to revise.

2. **Bankruptcy ⟨⟩288(2)—On summary petition to recover property from state receiver of another corporation, only question is whether receiver's claim is substantial.**

On review of an order denying a petition by a trustee in bankruptcy to compel the receiver appointed by a state court for another corporation to deliver the assets in his hands to the trustee, on the ground that they were the property of the bankrupt, the only question to be considered is whether the receiver's claim of adverse holding of the assets is substantial, or whether, on the other hand, it is merely colorable, since, if it is a substantial claim, it can only be determined in a plenary suit.

3. **Bankruptcy ⟨⟩140(½)—Relation between bankrupt coal company and separate railroad company held not to make assets of the latter property of the bankrupt.**

The fact that a coal company owned all of the stock of a railroad company formed to construct a railroad to the coal mines, and had furnished the money with which the railroad was to be constructed, does not show that the railroad company was without separate corporate existence, where it was in form incorporated and exercised the power of eminent domain, and the coal company charged the railroad company on its books with the advances made by it, and the railroad company issued its mortgage bonds on account thereof, which the coal company scheduled as assets in bankruptcy proceedings against it, since, even if the organization of the railroad company was primarily a means to carry out the coal company's purposes, that fact does not prevent it from thereafter having an independent existence.

4. **Bankruptcy ⟨⟩101—Court acquires custody of property constructively in bankrupt's possession.**

An adjudication in bankruptcy puts into the custody of the bankruptcy court all the bankrupt's property, either actively or constructively in his possession, including property held, not only by, but for, the bankrupt, but does not put into the custody of the court anything which the bankrupt then neither owned nor claimed title to.

5. **Bankruptcy ⟨⟩20(2)—Proceedings in state court held to show its receiver's claim to property was not merely colorable.**

Where a state court had appointed a receiver for a railroad company, all of whose stock was owned by bankrupt coal company, and the receiver had taken possession of and was retaining the assets of the railroad company, such proceedings are a strong indication that the claim of the receiver to possession of the property as against the trustee in bankruptcy of the coal company was not merely colorable.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

287 F.—28

**6. Bankruptcy ⟨key⟩20(2)—Denial by state court of validity of bonds issued by railroad corporation to bankrupt held not to show railroad's property belonging to bankrupt.**

A holding by a state court, which had appointed a receiver for a railroad corporation, all of whose stock was owned by bankrupt coal company, that the relations between the two companies was such that the bonds issued by the railroad company to the coal company were invalid as against the creditors of the railroad company, and that the mortgage securing the same was illegally executed, does not show that the claim of the receiver that the assets of the railroad company did not belong to the coal company was merely colorable.

Petition to Revise and Appeal from the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

In the matter of the Tennessee River Coal Company, bankrupt. Petition by Carter Lynch, as trustee in bankruptcy, against A. L. Roberson, to require the respondent to surrender to the trustee assets held by him as receiver appointed by the state chancery court for the Tennessee River Railroad Company. Petition dismissed without prejudice to a plenary suit, and the trustee appeals and petitions to revise. Appeal dismissed, and order affirmed on petition to revise.

On May 27, 1921, a petition was filed in the bankruptcy court by the trustee of the Tennessee River Coal Company (which had been adjudged bankrupt February 6, 1912); the present trustee having been appointed upon the reopening of the bankrupt estate in 1921 (the estate had been closed and the trustee discharged July 30, 1914), asking that the receiver of the property and assets of the Tennessee River Railroad Company, appointed as such February 20, 1912, by an order of a chancery court of the state of Tennessee, in a general creditors' suit pending in the state court, be required to surrender to the trustee in bankruptcy for administration in the bankruptcy court the funds held by the chancery receiver by virtue of that receivership as assets of the Tennessee River Railroad Company; upon the ground that the same were the property of the bankrupt estate. The receiver denied the jurisdiction of the referee under the petition, and moved to dismiss the same, for the reason that the receiver was an adverse claimant to the funds described therein, and that his right to the same could be determined only in a plenary suit. The referee denied the trustee's petition, on the ground that the trustee's claims to the property in the possession of the state court receiver could be determined only in a plenary suit, and for the further reason that the trustee's claim, if any, had been barred by the two-year limitation prescribed by section 11d of the Bankruptcy Act (Comp. St. § 9595). The District Judge modified the order of dismissal, by resting the same solely upon lack of jurisdiction to proceed summarily to determine the merits of the controversy involved, and upon the holding that the receiver's claim of adverse possession of the property was real, and not merely colorable—the order of dismissal being without prejudice to the right of the trustee, if he has any, to thereafter proceed by plenary suit in any court having jurisdiction of the controversy presented. The case is brought here both by appeal and by petition to revise.

The opinion of District Judge (now Mr. Justice) Sanford is as follows:

On February 6, 1912, the Tennessee River Coal Co. was adjudged bankrupt on its voluntary petition. Certain assets were administered, the trustee discharged and the estate closed in 1913.

In March, 1921, upon a petition of creditors alleging that the estate had been closed before being fully administered, it was reopened for the purpose of administering upon other assets, if any, and the cause re-referred to the referee.

---

⟨key⟩**For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes**

Upon such re-reference a new trustee was appointed, who thereafter filed a petition in the case, praying, in effect, a summary order on the receiver in the case of J. B. Wynne et al. v. Tennessee River Railroad Co., pending in the Chancery Court of Marion County, Tennessee, for the surrender of a fund held by him as such receiver arising from the proceeds of property sold therein as the property of said Railroad Company, but alleged in the petition, in substance, to have been the property of the bankrupt.

Notice having been served on said receiver requiring him to make defense to the petition, he appeared specially and moved to dismiss the petition on the ground that being an adverse claimant to said fund his right thereto could only be determined in a plenary suit, over which the referee would have no jurisdiction; and without waiving this objection, filed his answer in which he again denied the jurisdiction of the referee, and asserted his claim to this fund as one arising from the sale of property belonging to the Railroad Company, and not to the bankrupt, as well as relying upon laches and the statute of limitations of two years prescribed by section 11d of the Bankruptcy Act as to the bringing of suits by trustees in bankruptcy. An amended petition and answer thereto, again denying jurisdiction, having been filed, the matter was heard by the referee on pleadings and proof, and an order made by him on March 6, 1922, adjudging, among other things, that if the trustee had any right of action against the receiver, it could only be asserted in a plenary suit, which would now be barred by said statute of limitations and thereupon disallowing and dismissing the trustee's petition. This is the order which the trustee now seeks to review.

None of the property in question, which consisted of steel rails, frogs, switches, etc., was scheduled by the bankrupt as its property; none ever came into the actual possession of the bankruptcy court or of any of its officers; and none was administered by the former trustee.

And on February 19, 1912, thirteen days after the adjudication of the Coal Company in bankruptcy, the bill was filed in the Chancery Court in the above mentioned case of Wynne et al. v. Tennessee River Railroad Co. This was a general creditors' bill against the Railroad Company, to which neither the Coal Company nor the trustee in bankruptcy were parties, and sought the administration of the assets of the Railroad Company for the benefit of its creditors. A receiver was appointed in said chancery cause on February 20, 1912, who took possession of said property as part of the property of the Railroad Company, since which time it was continuously in possession of the receiver and held by him as the property of the Railroad Company until sold for the purpose of administering the assets in said chancery cause, for which purpose its proceeds are now held by the receiver, subject to the orders of the Chancery Court.

It is the theory of the trustee that said Railroad Company was and is not now a legally organized corporation but merely a corporate shell, chartered by the Coal Company, for its own benefit, as a subsidiary corporation and agency for the purpose of constructing a railroad to its coal properties, entirely financed by it and having in fact no separate legal corporate existence, and that the property in question was in substance and in fact the property of the Coal Company, bought with its money, and either never transferred to the Railroad Company or held by it as agent for the Coal Company and hence to be administered as part of its assets.

On the other hand, it is the theory of the receiver that, while the Railroad Company may have been chartered at the instance of the Coal Company, it was legally organized and acted as a separate legal entity, and that in such capacity it acquired the property in question, and contracted various debts to creditors for whose benefit its assets are properly to be administered in the chancery cause.

It is well settled that where property claimed by the trustee as part of the bankrupt estate is in the possession of a third person, claiming adversely title thereto or an interest therein, summary proceedings for its recovery will not lie in the bankruptcy court, but such a controversy is presented that resort must be had by the trustee to a plenary suit in a court in which it might have been prosecuted if the proceedings in bankruptcy had not been instituted.

Bankruptcy Act, § 23 (Comp. St. § 9607); I Lovel. Bankc'y (4th Ed.) § 36, p. 122, and cas. cit. note 64; Id. § 37, p. 124, and cas. cit. note 69; 1 Fed. Stat. Ann. (2d Ed.) 761, and cas. cit. in note on "Jurisdiction of Adverse Claims"; 2 Rem. Bankc'y (2d Ed.) § 796, p. 1668, and cas. cit., note 2, p. 1669.

If the property is tangible, the determination of the question as to who has possession or control of it determines the forum to which the parties must resort to work out their rights, and the manner of procedure as to whether summary or plenary. 2 Rem. Bankc'y (2d Ed.) § 796, p. 1668. If the possession, actual or constructive, is in the bankrupt, or in his agent, or some one not claiming a beneficial interest therein, or of an officer of the court of bankruptcy, that court has summary jurisdiction over it by order made in the bankruptcy proceeding; but, if, on the other hand, a third party claiming a beneficial interest in the property, has possession, then the trustee cannot bring him into the proceedings, and he is entitled to be heard in plenary action. This rule is in accordance with Looschen Land Co. v. Milson (C. C. A. 3d Circ.) 266 Fed. 359, in which it was held that a court of bankruptcy was without summary jurisdiction to determine that the property of a second corporation was the property of the bankrupt corporation and to order such property turned over to the trustee in bankruptcy over the objection of the second corporation. And in so far as the doctrine of In re Eilers' Music House (C. C. A. 9th Circ.) 270 Fed. 915, in which Ross, Circuit Judge, dissented on the specific authority of the Looschen Case, may be in conflict therewith, I am of opinion that the Looschen Case is based on the sounder reasoning and should be followed.

I do not find that this rule is in conflict with Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969. There the only question was whether summary proceedings would lie to obtain possession of the books and records of the bankrupt corporation in the custody of its officers asserting no adverse claim thereto: and I do not think that the language used on page 113 of 216 U. S., 30 Sup. Ct. 377 (54 L. Ed. 402, 17 Ann. Cas. 969), distinguishing between the one class of cases where there is an adverse claim based upon a transfer antedating the bankruptcy, and the other where the property is in the possession of the bankrupt or of the bankrupt's agent or officer, was intended as the statement of a general rule applicable to all classes of adverse claims which might arise, or as indicating that an adverse claimant may be proceeded against summarily because his claim is not based upon a transfer antedating the bankruptcy. The essential distinction stated is, as I take it, between possession by adverse claimants, on the one hand, and by the bankrupt and his agents, on the other.

And while in a summary proceeding brought by a trustee in bankruptcy to recover property in the possession of an adverse claimant the court of bankruptcy may enter upon a preliminary inquiry to determine whether the adverse claim is real or merely colorable, and if it be merely colorable may proceed summarily; yet, on the other hand, if found to be real, the bankruptcy court must decline to adjudicate summarily upon the merits. 1 Lovel. Bankc'y (4th Ed.) § 36, p. 123, and cas. cit. note 66.

Applying this rule I have examined the proof under the issues presented by the pleadings, and conclude that the claim of the receiver, who holds the fund in question as the representative of the Railroad Company and its creditors, and adversely to the bankrupt and its trustee, including the contention that the property involved was owned and possessed by the Railroad Company at the time the petition in bankruptcy was filed, in its own and independent right, and not as the agent of the Coal Company, is real, and not merely colorable.

I am hence of opinion that the referee was without jurisdiction to proceed summarily to determine the merits of the controversy presented, and that, without reference to the effect of section 11d of the Bankruptcy Act or other issues presented by the pleadings, none of which I now determine, his order dismissing the trustee's petition should be confirmed, except that the same should be modified so that such dismissal be made for want of juridiction and without prejudice to the right of the trustee, if any he have, to hereafter

proceed by plenary suit in any court having jurisdiction of the controversy presented.

Charles C. Moore, of Chattanooga, Tenn., for appellant.

Frank Spurlock, of Chattanooga, Tenn. (Fitzgerald Hall, of Nashville, Tenn., and Brown, Spurlock & Brown, of Chattanooga, Tenn., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge (after stating the facts as above). [1] So far as concerns the method of review, the result is the same whether the case is considered on appeal or on petition to revise. Petitioner has treated the proceeding below as summary in character, and that character may be allowed to determine its nature, in a reviewable sense, as an administrative order in course of bankruptcy. In re Orinoco Corporation (C. C. A. 6) 269 Fed. 344, 346. The appeal is accordingly dismissed.

[2] The sole substantial question presented is whether the court below rightly held that the claim of the trustee in bankruptcy to the funds in the hands of the state court receiver can be adjudicated only in a plenary suit. Under this summary petition, the ultimate merits of the controversy can be considered only so far as they aid in determining whether the receiver's claim of adverse holding is substantial, or whether, on the other hand, it is merely colorable. To hold otherwise would be to defeat the requirement of plenary suit where possession of property is held under adverse claim. In our opinion the order of the District Court dismissing the summary petition must be affirmed, substantially upon the opinion of that court, whose reasoning and conclusions we approve.

The court below has found as facts that none of the property in question was scheduled by the bankrupt as its property; that none ever came into the actual possession of the bankruptcy court or of any of its officers; that none was administered by the former trustee; that the state court receiver took possession of the property as part of the property of the Railroad Company, and that since such possession was taken (on February 20, 1912) the property has been continuously in the receiver's possession and held by him as the property of the Railroad Company, until sold, under order of the state court, for the purposes of administering the assets in the chancery cause; and that the proceeds of the sale are now held by the receiver for the same purpose and subject to the order of the chancery court.

[3] The record amply sustains these conclusions, which, unless overcome by other considerations, compel a holding that the receiver's claim to the possession of the property was not merely colorable. We find nothing in the opposing considerations advanced by the trustee which overcomes the effect of the situation stated by the trial judge. Of the trustee's theory, as stated in the opinion of the District Judge, that the Railroad Company is without separate legal corporate existence and holds the property in question merely as agent for the bankrupt, it is perhaps enough to say that the propositions of fact relied upon by the trustee to support his theory are not, so far as unequivocally

proven, sufficient, as matter of law, to destroy the alleged adverse character of the receiver's claim—having in mind that the railroad company was in form incorporated, that the power of eminent domain was exercised by it in obtaining title to the right of way, the natural inference from the bankrupt's schedules that it claimed no ownership of the rails, frogs, switches, etc., that while the bankrupt furnished the money to make the purchase from the Nashville, Chicago & St. Louis Railroad Company, it charged the Tennessee River Railroad Company on its books with the advances therefor, that the Railroad Company issued its mortgage bonds on account thereof, which bonds were scheduled by the bankrupt as belonging to it, that although the Nashville, Chicago & St. Louis Railroad Company was listed as a creditor of the bankrupt, and proved its claim in the bankruptcy cause, its claim was duly established and allowed by the state court in the general creditors' suit, and that the receiver denies that the Railroad Company was a mere corporate shell or agency of the bankrupt.

[4] Even if the organization of the Railroad Company was primarily but an incident and a means to carry out the bankrupt's purposes, it does not necessarily follow therefrom, as matter of law, that the Railroad Company has not now an independent existence. There was substantial testimony at least tending to show that the Railroad Company had both title to and possession of the property in dispute. While the bankruptcy adjudication put in the custody of the bankruptcy court all the bankrupt's property, either actually or constructively in its possession, including property held not only by, but for, the bankrupt (In re Orinoco Corporation, supra), it did not, as matter of law, put into the custody of the bankruptcy court anything which the Coal Company then neither owned nor claimed title to.

[5] While it is true that nothing done in the state court proceeding necessarily affected the status of the bankrupt estate otherwise existing as against the trustee in bankruptcy, the assertion of jurisdiction by the state court, and its continued possession of the property, at the very least strongly tend to show that the claim of adverse possession made by the receiver is not merely colorable. We find nothing in Re Diamond's Estate, 259 Fed. 73, 170 C. C. A. 138, supporting the trustee's contention of jurisdiction in the instant case by summary petition. In that case there was no claim that the property in controversy did not belong to the bankrupt. It had come into the custody of the state court previous to the bankruptcy. The substantial question was whether the state court should retain its jurisdiction, notwithstanding bankruptcy, so far as concerned determination of the compensation, fees, and disbursements of the receiver, or whether the bankruptcy court should pass upon those questions.

[6] In the instant case the decree of the state court denying the validity of the mortgage bonds issued by the Railroad Company was clearly not an adjudication of the question before us. Indeed, we do not understand the trustee so to contend. In the final decree of the chancery court the recital, as basis of the dismissal of the petition, is merely that:

"The court is of opinion that the equities of the petition are fully met and denied by the answer and not sustained by the proof, and the court being further of opinion that the indebtedness sued on, because of the relationship among the parties, was invalid as against the creditors of the Tennessee River Railroad Company, and that the mortgage securing the same was illegally executed and void."

Plainly, we could not reverse the action of the District Court without ourselves determining the merits of the conflicting claims of the parties. The order of the District Court is affirmed.