## BEE BLDG. CO. v. DANIEL.
### No. 9187.

Circuit Court of Appeals, Eighth Circuit.
Feb. 26, 1932.

R. B. Hasselquist, of Omaha, Neb. (Stanley M. Rosewater, George N. Mecham, and John L. Chew, all of Omaha, Neb., on the brief), for appellant.

Winthrop B. Lane, of Omaha, Neb. (Halleck F. Rose, Arthur R. Wells, and Paul L. Martin, all of Omaha, Neb., on the brief), for appellee.

Before KENYON and GARDNER, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge.

The sole question in this case is whether the title to certain furniture, fixtures, and equipment was vested in the bankrupt at the time of adjudication. Upon a hearing before a referee in bankruptcy, it was determined that such articles were the property of the bankrupt.

Upon review, the order of the referee authorizing the removal of such furniture, fixtures, and equipment by the trustee was confirmed by the District Court. From this order the appellant duly perfected its appeal.

It appears from the evidence that prior to February 1, 1917, appellant was the owner of a certain building in the city of Omaha, Neb., and on that date executed a ninety-nine year lease to the Keystone Investment Company. Subsequently, the bankrupt acquired all of the stock of the Keystone Investment Company and indirectly complete control of said lease. The terms of the lease were carried out by both parties until bankruptcy intervened.

The bankrupt was a financial institution and became an occupant or tenant of a portion of said building and, with an affiliated company, used same as a place for carrying on a loan, banking, and trust business. For convenience in the transaction of its business, extensive alterations and additions were made to the space occupied by it and affiliated company, and the furniture, fixtures, and equipment, covered by the referee's order, were added and attached. Such furniture, fixtures, and equipment were as follows: "Cages constructed of steel, bronze and marble; the marble railing, the wood and glass partitions installed for private offices on the west side of the banking rooms, the bronze grill and door, separating the safe deposit vault from the balance of the banking rooms, the steel time lock vault door to the vault commonly called the book vault located to the west of the main vault; the two steel vault doors with time lock equipment installed in the main vault, the safety deposit boxes, together with the steel lining grill and other equipment located in the main vault, the mahogany booths used in connection with the safety deposit vaults, all electric fixtures and bulbs installed in the banking rooms, the exhaust ventilating fan installed at the rear of the banking rooms and the wood cabinets used for cloak racks, all located in the premises formerly occupied by the Peters Trust Company and Peters National Bank, on the first floor of the Peters Trust Building, at 17th & Farnum Street, in the City of Omaha, Nebraska."

It is the contention of the appellant that such articles were so attached to the real estate as to become a part thereof, and the title thereto became vested in appellant as the owner of the building. Both the referee in bankruptcy and the District Court found upon the evidence that such articles were chattels or trade fixtures, and that same could be removed without detriment to the building. Other facts will be stated, as they may become pertinent, in the course of the opinion.

■ 1. Complaint is made that the bankruptcy court was without jurisdiction to adjudicate the claims of the parties in a summary proceeding. The evidence was undisputed that the trustee occupied the same space and was at all times using such furniture, fixtures, and equipment in the administration of his estate. In Priest v. Weaver, 43 F.(2d) 57, 59, the rule was there announced by this court that: "The bankruptcy court had jurisdiction to determine whether it had possession of the property, actual or constructive. If it had possession, it could determine in a summary proceeding, controversies involving substantial adverse claims thereto; but if it lacked possession, it could not, in a sum-

mary proceeding, adjudicate the validity of a substantial adverse claim. Taubel, etc., Co. v. Fox, 264 U. S. 426, 44 S. Ct. 396, 401, 68 L. Ed. 770; Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897; Remington on Bankruptcy, § 2395."

In view of the evidence that the trustee was in possession of the property involved, it was not error to determine the controversy in a summary proceeding.

■ 2. The important question is whether the property involved was so attached to the real estate as to lose its character as personalty. That such articles and equipment were attached or annexed to the realty by the bankrupt for convenience in carrying on its business cannot be seriously questioned upon this record. Such was properly found both by the referee and the district judge. Under such circumstances, the right of removal is ordinarily vouchsafed to the tenant. 26 C. J. § 84.

■ The rule making fixtures a part of the freehold has been greatly relaxed in favor of tenants. In fact the rule is that the greatest latitude and indulgence are to be allowed in favor of the tenant's claim to have particular articles considered as personal chattels. Such was the holding by the Supreme Court of the United States in the early case of Van Ness v. Pacard, 27 U. S. (2 Pet.) 137, loc. cit. 146, 7 L. Ed. 374, where Mr. Justice Story said: "The sole question is, whether it is designed for purposes of trade or not? A tenant may erect a large as well as a small messuage, or a soap-boilery of one or two stories high, and on whatever foundations he may choose. * * * The only point is, whether it is accessory to carrying on the trade or not. If bona fide intended for this purpose, it falls within the exception in favor of trade."

This rule was followed in Re Montello Brick Works (D. C.) 163 F. 624, loc. cit. 632. To the same effect is the rule announced in 11 R. C. L. § 15, as follows: "A tenant may remove articles placed in or upon the property during the term, for the better enjoyment or use of it, and this includes his right to remove not only such articles as have retained their character as personalty, but such as would have been classed as fixtures if attached by the owner of the freehold. This right of a tenant to remove fixtures extends to those articles which have been put up for ornament or for his own comfort and convenience, or for trade purposes. Such

fixtures may be removed when they can be taken without injury to the premises."

In re Shelar, 21 F.(2d) 136, 138, the District Court of the Eastern District of Pennsylvania determined the question of the right of the tenant to remove a silo from the leased premises, and in doing so said:

"It is true the general rule is that all annexations of a permanent character pass with the realty; but the rules of law with respect to fixtures between landlord and tenant are much relaxed, and are not held with the same firmness as between vendor and vendee, or mortgagor and mortgagee.

"Between the landlord and tenant there are three well-recognized exceptions to the general rule relative to the removal of fixtures:

"(a) Trade fixtures, articles necessary to the carrying on of a trade. * * *

"These may be removed by the tenant. * * * This doctrine is supported by an abundance of authority."

■ An examination of the lease between the appellant and the Keystone Investment Company, dated February 1, 1917, does not disclose an intention to make the fixtures attached by the bankrupt such accessories to the building as that they shall be permanent. On the contrary, both the lease and the conduct of the parties, as disclosed by the evidence, would indicate an opposite purpose.

The evidence was undisputed that the bankrupt had carried on its books all of said articles as assets, and that it had regularly paid taxes thereon. The total cost of such fixtures was approximately $125,000, and they were not within the permanent improvements contemplated by the lease.

■ 3. The fact that the stock of the corporate lessee was owned by the bankrupt is not sufficient within itself to merge corporate entities.

In Texas Co. of Mexico, S. A., v. Roos (C. C. A.) 43 F.(2d) 1, loc. cit. 15, it was said: "Any corporation has the power of control over another in which it owns all the capital stock, but that is immaterial in the absence of proof of the exercise or use of that power in such manner as to cause a wrong or injury to the complaining party. Peterson v. Chicago, etc., Ry. Co., 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841."

Other questions raised have been considered but found without merit.

The decree of the chancellor below was for the right party, and should be affirmed.